IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JENNIFER B. PHELPS                                                    PLAINTIFF

v.                                    No. 4:14–CV–684-SWW–BD

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                        DEFENDANT

## Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge

Susan W. Wright.  A party to this dispute may file written objections to this

recommendation.  An objection must be specific and state the factual and/or legal basis

for the objection.  An objection to a factual finding must identify the finding and the

evidence supporting the objection.  Objections must be filed with the clerk of the court

no later than 14 days from the date of this recommendation.[1]  The objecting party must

serve the opposing party with a copy of an objection.  Failing to object within 14 days

waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Wright

may adopt the recommended disposition without independently reviewing all of the

record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections
waives right to de novo review and to appeal magistrate judge's findings of fact).

## Reasoning for Recommended Disposition

Jennifer Brandi Phelps seeks judicial review of the denial of her application for supplemental security income (SSI).[3]  Ms. Phelps has not worked much in the past;[4] she last worked in June 2010 at a McDonald's restaurant.[5]  She alleged disability since age 17, but she is not eligible for SSI until applying.[6]  As a result, this case considers whether Ms. Phelps was disabled beginning January 18, 2012, at age 27.  Ms. Phelps bases her claim on diabetes, bipolar disorder, borderline personality disorder, manic depression, and bad vision.[7]

**The Commissioner's decision**.  After considering the application, the Commissioner's ALJ identified type II diabetes with neuropathy in the legs, obesity, mood disorder, anxiety disorder, and borderline personality disorder as severe impairments,[8] but determined that Ms. Phelps could do some sedentary work.[9]  Because

---

[3]SSA record at p. 116 (applying on Jan. 18, 2012 and alleging disability beginning Jan. 1, 2002).

[4]*Id*. at p. 124 (earnings history).

[5]*Id*. at p. 131, 143 & 162.

[6]20 C.F.R. § 416.335; *Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989).

[7]SSA record at p. 143.

[8]*Id*. at p. 18.

[9]*Id*. at p. 20.

2

a vocational expert identified available jobs for a person with Ms. Phelps's ability to work — document preparer and production assembler [10] — the ALJ determined that Ms. Phelps was not disabled and denied the application.[11]

After the Commissioner's Appeals Council denied a request for review,[12] the decision became a final decision for judicial review.[13]  Ms. Phelps filed this case to challenge the decision.[14]  In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[15] This recommendation explains why substantial evidence supports the decision and why the ALJ made no legal error.

---

[10]*Id*. at p. 54.

[11]*Id*. at p. 26.

[12]*Id*. at p. 1.

[13]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[14]Docket entry # 1.

[15]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

**Ms. Phelps's allegations**.  Ms. Phelps challenges the determination that she could work.  She says limiting her to simple work does not account for her moderate difficulty with concentration, persistence, or pace.  She complains about the omission of a cane in defining her ability to work.  She argues that the ALJ should have obtained a treating-physician opinion about her ability to work.  She faults the ALJ for relying on the second mental examiner's report because she claims the examiner actively created inconsistencies between her first and second mental diagnostic exams.  She further maintains that the requirements of document preparer exceed her ability to work.  For these reasons, she argues, substantial evidence does not support the ALJ's decision.[16]

**Applicable legal principles**.  For substantial evidence to support the decision, a reasonable mind must accept the evidence as adequate to show Ms. Phelps could do some sedentary work.  Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."[17]  Sedentary work "represents a significantly restricted range of work. Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations."[18]

---

[16]Docket entry # 12.

[17]20 C.F.R. § 416.967(a).

[18]SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work--Implications of a Residual Functional Capacity for Less Than a Full Range of*

The ALJ placed the following limitations on sedentary work:

(1) no climbing, heights, or dangerous machinery,

(2) no temperature extremes, and

(3) work would have to be unskilled, simple, and repetitive, involving superficial interpersonal contact.[19]

For substantial evidence to exist, a reasonable mind must accept the evidence as

adequate to show that Ms. Phelps could work within these limits.  A reasonable mind

would accept the evidence as adequate for the following reasons:

1. **Treatment history suggests no disabling symptoms**.  Ms. Phelps claims she experiences severe pain in her legs and hips such that she cannot walk or stand.  She says she relies on a cane to walk.  Her treatment history, however, contradicts her allegations.  She sought medical treatment once during the time period for which benefits were denied: an emergency room visit for a urinary tract infection.[20]  A reasonable mind would expect a person with disabling symptoms to seek more frequent treatment.[21]  Ms. Phelps's treatment history undermines her argument for a treating-physician opinion, because treatment records establish no treating physician during the time period for which benefits

---

*Sedentary Work.*

[19]SSA record at p. 20.

[20]*Id*. at p. 268.

[21]*Ostronski v. Chater*, 94 F.3d 413, 419 (8th Cir. 1996) (complaints of disabling pain and functional limitations are inconsistent with the failure to take prescription pain medication or to seek regular medical treatment for symptoms); *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) ("A failure to seek aggressive treatment is not suggestive of disabling back pain.").

were denied.[22]

2.  **Medical evidence establishes no serious functional limitation preventing sedentary work**.  Remote medical evidence shows that Ms. Phelps had type II diabetes[23] and peripheral neuropathy in the legs.[24]  Her primary care physician (PCP) prescribed an anti-epilepsy drug to treat neuropathic pain.[25]  After a few months, Ms. Phelps reported results.[26]

According to the neurological examiner, Ms. Phelps had a reduced sensory appreciation to light touch at the mid-calf level, slightly reduced distal reflexes and sensory loss in the legs, and some difficulty with tandem walking (walking in a straight line heel-to-toe).[27]  These findings may explain why Ms. Phelps uses a cane, but sedentary work does not require much walking.  Sedentary work involves mostly sitting.  Even if Ms. Phelps used a cane, using a cane does not prevent sedentary work.

Because peripheral neuropathy can impair a person's sense of balance and

---

[22]*Randolph v. Barnhart*, 386 F.3d 835, 840 (8th Cir. 2004) (determining medical opinion that claimant was unable to work due to depression wasn't entitled to controlling weight as treating source opinion where physician saw claimant three times, none of which were during period of employment).  *But see DiMasse v. Barnhart*, 88 Fed. App'x 956, 957 (8th Cir. 2004) (determining psychiatrist was a treating psychiatrist based on two visits in 1996, two in 1997, one visit in 1998, and seven visits in 1999, and lengthy report showing significant familiarity with claimant's history and condition).

[23]SSA record at p. 259.

[24]*Id*. at p. 252 (nerve conduction study of legs).

[25]*Id*. at p. 259.

[26]*Id*. at p. 283.

[27]*Id*. at p. 311.

coordination,[28] and dull the ability to sense temperature,[29] the ALJ properly excluded work involving climbing, heights, dangerous machinery, and temperature extremes.  A reasonable mind would accept the evidence as adequate to show Ms. Phelps has the physical ability to do sedentary work.

3.  **The ALJ properly relied on the second mental examiner's report**.  This case considers Ms. Phelps's second application.  Ms. Phelps underwent mental diagnostic exams for both her first and second applications.  She favors the report for the first exam[30] because the first examiner reported mental limitations.  The second examiner, however, characterized Ms. Phelps as an unreliable reporter.  The second examiner doubted the reported symptoms.[31]  Ms. Phelps complains about the second examiner's reliance on an inconsistency that is not an actual consistency,[32] but that complaint does not undermine the examiner's report.  The examiner identified other inconsistencies supporting his characterization.[33]

The report for the second exam is the more probative report.  The first exam preceded the relevant time period by 13 months, whereas the second report addresses the time period for which benefits were denied.  During the intervening 17 months, Ms. Phelps's PCP prescribed an anti-anxiety

---

[28]Gary Gilles, Ken R. Wells & Laura Jean Cataldo, Diabetic Neuropathy, 2 The Gale Encyclopedia of Med. 1356 (4th ed.).

[29]Altha Roberts Edgren & Ken R. Wells, Diabetes Mellitus, 2 The Gale Encyclopedia of Med. 1348 (4th ed.).

[30]SSA record at pp. 224-31.

[31]*Id*. at p. 283.

[32]This complaint flows from Ms. Phelps's report during the first exam that she was raped by her uncle at age five and her report during the second exam that she was raped by her brother at age five.  According to Ms. Phelps, the difference is not an actual inconsistency because she was adopted by her grandmother, making the culprits the same person.

[33]SSA record at p. 286, ¶ 4.

medication.[34]  Ms. Phelps reported good results.[35]  Symptoms that can be controlled with treatment are not disabling.[36]

According to the second examiner, Ms. Phelps had the cognitive capacity to perform basic work-like tasks.[37]  She sustained concentration on evaluation tasks.[38]  Agency mental health consultants opined that Ms. Phelps could do the type of work the ALJ required.[39]  That type of work accommodates her complaint — moderate limitations in concentration, persistence, or pace — because the work is done by habitual repetition.

Ms. Phelps relies on *Brachtel v. Apfel*, 132 F.3d 417 (8th Cir. 1997), for the proposition that "reference to simple jobs in the hypothetical [is] not enough to constitute inclusion of … impairments"[40] in concentration, persistence, or pace.  The *Brachtel* court relied on *Newton v. Chater*, 92 F.3d 688 (8th Cir. 1996).  In *Newton*, the court remanded the ALJ's decision with instructions:  "Any hypothetical question on remand should include [the claimant's] deficiencies of concentration, persistence, or pace so that the vocational expert might accurately determine his ability to work."[41]

Since *Newton*, the Eighth Circuit has consistently instructed that a hypothetical question is proper if it captures the "concrete consequences

---

[34]*Id*. at p. 193.

[35]*Id*. at p. 283.

[36]*Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004); *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[37]SSA record at p. 287.

[38]*Id*.

[39]*Id*. at pp. 307 & 341.

[40]*Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir. 1997).

[41]*Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996).

that flow from" the claimant's deficiencies.[42]  In *Newton*, "[t]here [was] no dispute in the medical evidence that [the claimant] suffers from deficiencies of concentration, persistence, or pace…."[43]  That is not the case here.  Ms. Phelps based her claim on physical pain in her legs and hips;

---

[42]*Hulsey v. Astrue*, 622 F.3d 917, 925 (8th Cir. 2010) (hypothetical limiting claimant to "work of an unskilled nature involving only superficial interpersonal contact" adequately described concrete consequences of claimant's mental impairments; claimant's account of her daily routine shows mental impairments do not prevent her from tending to her children or running a household); *England v. Astrue*, 490 F.3d 1017, 1023 (8th Cir. 2007) ("The hypothetical need not 'frame the claimant's impairments in the specific diagnostic terms used in the medical reports, but instead should capture the 'concrete consequences' of those impairments.'"); *Hillier v. Social Sec. Admin.*, 486 F.3d 359, 366 (8th Cir. 2007) ("Although the ALJ's hypothetical question did not expressly state [claimant] was functionally illiterate and had poor reading and writing skills, [his] low average to borderline intellectual functioning necessitated limiting [him] to simple, concrete work, either unskilled or semiskilled. By limiting [claimant] to simple, concrete work, the ALJ captured the practical consequences of [his] low average to borderline intellectual functioning."); *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006) (A "hypothetical question need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the 'concrete consequences' of those impairments;" excluding jobs involving the general public captured concrete consequences of mental impairment); *Roberts v. Apfel*, 222 F.3d 466, 471 (8th Cir. 2000) (assuming diminished reading ability and excluding jobs "requiring frequent, extensive or [constant] reading of written instructions" captured concrete consequences of borderline intellectual functioning); *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997) (hypothetical question failed to capture concrete consequences of medication side effects and inability to sit); *Pickney v. Chater*, 96 F.3d 294, 297 (8th Cir. 1996) (hypothetical question assuming no mental limitations did not capture concrete consequences of borderline intellectual functioning); *Roe v. Chater*, 92 F.3d 672, 676 (8th Cir. 1996) (" While the ALJ's hypothetical question does not include the phrase "deficiencies of concentration, persistence, or pace," it does explicitly state both the mental conditions that cause these deficiencies and the concrete consequences that flow from them.").

[43]*Newton*, 92 F.3d at 695.

she alleged no problems with concentration or completing tasks.[44] According to her mother, Ms. Phelps finished tasks and paid attention for quite a while so long as she was sitting.[45]  She watched television and played video games until she went to bed.[46]  She demonstrated an adequate capacity to sustain concentration and persistence during the mental status exam.[47]  She testified that she "occasionally" had problems with concentration.[48]  Under these circumstances, the ALJ's hypothetical question captured the concrete consequences of her mental impairment.

4.  **Vocational evidence supports the decision**.  The ALJ asked a vocational expert about work for a person with Ms. Phelps's limitations.[49] The vocational expert identified document preparer and production assembler as available work.[50]  Ms. Phelps argues that the job of document preparer requires more reasoning ability than the ALJ determined she was capable of, because a worker must "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and deal] with problems involving several concrete variables in or from standardized situations."[51]  She implies she is limited to reasoning level one, which requires a worker to "[a]pply commonsense understanding to carry out simple one- or two-step instructions [and deal] with

---

[44]SSA record at p. 177.

[45]*Id*. at p. 159.

[46]*Id*. at p. 172.

[47]*Id*. at pp. 287-88.

[48]*Id*. at p. 41.

[49]*Id*. at pp. 53-54.

[50]*Id*. at p. 54.

[51]Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, code 249.587-018.

standardized situations with occasional or no variables….”[52]

The requirement for unskilled, simple, repetitive work does not equate to reasoning level one.  Moreover, preparing documents for microfilming does not implicate a higher level of reasoning than Ms. Phelps demonstrated.  Even if evidence suggested Ms. Phelps lacked the ability to apply commonsense to carry out instructions or deal with standardized situations, she could work as a production assembler.  To the extent she suggests there are not enough production assembler jobs to meet the Commissioner’s burden to show work exists that she could do,[53] the vocational expert identified watch crystal assembler as an example of production assembler jobs, not as the only production assembler job.  The vocational expert explained that production assemblers vary according to the item assembled.[54]

The ALJ’s requirements address Ms. Phelps’s allegations.  She reported no problems dealing with others when she applied for SSI,[55] but she later reported difficulty getting along with others.[56]  The ALJ limited interpersonal contact.  That limitation addresses her allegation.  Neither a document preparer nor a production assembler involve much interpersonal contact, because the work involves things rather than people.  A reasonable mind would accept the vocational evidence as adequate to show work exists that Ms. Phelps could do, regardless of whether such work exists where she lives, whether a job vacancy exists, or

---

[52]Dictionary of Occupational Titles, app. C.

[53]*Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992) (“The claimant bears the burden of proving disability. Having shown, however, that he is unable to perform his past relevant work, the burden shifts to the [Commissioner] to show that work exists in the national economy that the claimant is capable of performing.”).

[54]SSA record at p. 54.

[55]*Id*. at pp. 177-78.

[56]*Id*. at p. 282 (reporting difficulty getting along well with others, including supervisors, coworkers and customers) & p. 42 (testifying that she does not like being around people; people make her nervous; she does not like crowds).

11

whether she would be hired if she applied for work.[57]

## Conclusion and Recommendation

Substantial evidence supports the ALJ's decision.  A reasonable mind would accept the evidence as adequate to support the decision because the evidence shows no serious functional limitation preventing sedentary work.  The ALJ made no legal error. For these reasons, the undersigned magistrate judge recommends DENYING Ms. Phelps's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

Dated this 28th day of July, 2015.

_____
UNITED STATES MAGISTRATE JUDGE

---

[57]42 U.S.C. § 1382c(a)(3)(B) (defining disability).